UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

In re Application of

ALPINE PARTNERS (BVI) L.P.,

Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding.

Case No. 23-

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

VORYS, SATER, SEYMOUR AND PEASE LLP
Rajeev K. Adlakha (0087096)
*Trial Attorney*
200 Public Square, Suite 1400
Cleveland, OH 44114
Telephone: (216) 479-6100
rkadlakha@vorys.com

Of Counsel:

PALLAS PARTNERS (US) LLP
Duane L. Loft
Brianna Hills Simopoulos
Mark C. Davies
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com
Mark.Davies@pallasllp.com

*Attorneys for Petitioner*

**EX PARTE APPLICATION**

Alpine Partners (BVI) L.P. ("Petitioner") respectfully submits this application pursuant to 28 U.S.C. § 1782 (the "Application") seeking an order: (a) granting Petitioner leave to serve a subpoena on Vivek Ramaswamy ("Respondent"); (b) directing Respondent to produce the materials described in the Subpoena within thirty days of service of the Subpoena; (c) directing Respondent to provide deposition testimony in compliance with the Subpoena on a mutually agreeable date within a reasonable time after each of Respondent's confirmation of his final production of documents in response to the Subpoena issued against him; and (d) granting any and all other relief the Court deems just and proper.

**PRELIMINARY STATEMENT**

Petitioner respectfully submits this Application pursuant to 28 U.S.C. § 1782 to take discovery from an individual found in this District for use in shareholder appraisal rights litigation (the "Appraisal Proceeding") pending in the Supreme Court of Bermuda (the "Bermuda Court"). In the Appraisal Proceeding, Petitioner (along with other dissenting shareholders) seeks a determination of the fair value of its shares in Myovant Sciences Limited ("Myovant" or the "Company"), a Bermuda company that was delisted from the New York Stock Exchange and taken private on March 10, 2023. Petitioner's shares were forcibly canceled through a $1.7 billion take-private merger orchestrated by Sumitovant Biopharma Ltd. ("Sumitovant" or the "Buyer"), then the controlling shareholder of Myovant (the "Merger"). Through this Application, Petitioner seeks discovery from Respondent Vivek Ramaswamy, a director of Sumitovant at the time of the Merger, to gather important evidence relating to how the Buyer valued the Company at the time of the Merger and the negotiating process that led to the Merger—both core issues in the Appraisal Proceeding.

Petitioner's Application meets all of the statutory requirements of Section 1782: (i) Respondent "resides or is found" in this District because he lives in Columbus Ohio; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioner, a claimant in the Appraisal Proceeding, easily meets the standard for an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioner's Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

The first *Intel* factor weighs in favor of discovery because Petitioner seeks discovery from "nonparticipants" in the Appraisal Proceeding. *Id.* As recognized in *Intel*, "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent §1782(a) aid." *Id.* Respondent is not a named party in the Appraisal Proceeding or otherwise subject to the jurisdiction of the Bermuda Court.

Under the second *Intel* factor, which considers the character of the foreign proceeding and receptivity of the foreign tribunal, there is no indication, let alone the required "authoritative proof," suggesting that the Bermuda Court might be unreceptive to Section 1782 assistance. *Id.* To the contrary, as established in the declaration of Petitioner's Bermuda counsel, Mark Chudleigh, Petitioner will have the right to present evidence gathered under Section 1782 to the Bermuda Court in support of its claims. Several U.S. courts, have granted Section 1782 applications for the production of documents in aid of appraisal proceedings, including in Bermuda courts.

Under the third *Intel* factor, the Application is not concealing any improper attempt to circumvent foreign discovery restrictions on proof gathering. *See Intel*, 542 U.S. at 264. The

requested discovery does not implicate any privilege or special protection that would make it improper under Bermuda law.

Under the fourth *Intel* factor, the proposed discovery is not unduly burdensome. *Id.* To the contrary, the Subpoenas are tailored to seek evidence addressing the fair value of the Petitioner's shares in the Company and the process that the Buyer and the Company undertook to negotiate and approve the Merger. As explained in the accompanying Chudleigh Declaration, such evidence is information directly relevant to the critical issues in the Appraisal Proceeding.

Finally, the Court should exercise its discretion to order production of any responsive discovery that Respondent has in his possession, custody, or control, regardless of the physical location of that evidence. Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad, particularly where, as here, the discovery is from a third-party not subject to the jurisdiction of the foreign court.[1]

## BACKGROUND

**A.     Myovant**

In 2014, Vivek Ramaswamy founded Roivant Sciences Ltd. ("Roivant"), a pharmaceutical technology company that trades on NASDAQ following a SPAC merger transaction in 2021.[2] Roivant formed several subsidiaries it called "vants" that each focused on different

---

[1] "An ex parte application is an acceptable method for seeking discovery under § 1782." *In re Natco Pharma (Canada), Inc.*, No. 2:22-MC-33, 2022 WL 3907980, at *1 (S.D. Ohio Aug. 31, 2022).

[2] Mr. Ramaswamy was the CEO of Roivant until January 2021 and the Chairman of Roivant until February 2023, when he stepped down to focus on his campaign for President of the United States, which is underway. The day after announcing his presidential bid in February 2023, Mr. Ramaswamy sold four million shares in Roivant, worth roughly $32 million at the time, but still owns more than 54 million shares, according to public filings. *See* Jessica Piper, *How Vivek Ramaswamy Made a Fortune before Pivoting to Politics*, POLITICO (May 14, 2023), *available at* https://www.politico.com/news/2023/05/14/how-vivek-ramaswamy-made-money-00096046. The Proxy Statement lists Roivant's business address as the same New York City office space as Sumitovant Ltd. and SBI.

4

biopharmaceutical sectors. One of those "vants" was Myovant, a biopharmaceutical company that develops and commercializes treatments focused on women's health and prostate cancer. Myovant was taken public by Roivant via an initial public offering in 2016, after which Myovant was listed on the New York Stock Exchange. Sumitomo Pharma Co., Ltd. ("Sumitomo"), a Japanese biopharmaceutical company, acquired its stake in Myovant through a transaction with Roivant in 2019 through which Sumitomo acquired Roivant's interest in certain of Roivant's pharmaceutical companies, including Myovant (the "Roivant Transaction"). *See* Declaration of Duane L. Loft ("Loft Decl."), Ex. 1 (the "Proxy Statement") at 23. As a result of the Roivant Transaction, Sumitovant became the indirect beneficial owner of a majority of the outstanding Myovant common shares. *Id.* Prior to the Merger, Sumitovant beneficially owned approximately 51.5% of the outstanding Myovant shares and had voting power to elect greater than 50% of the Myovant board of directors. *Id.* at 58.

    **B.    The Merger**

        1.    <u>Pre-Offer Information Sharing and the Special Committee</u>

On February 2, 2022, Sumitovant and Myovant entered into an information sharing agreement pursuant to which "Myovant agreed, for so long as Sumitovant, together with its affiliates, is a majority owner of Myovant, to supply certain information summarizing material aspects of Myovant's business to Sumitovant, and [to] give Sumitovant and its representatives the reasonable opportunity to discuss such information with Myovant's senior management." *Id.* at 24.

On April 4, 2022, Sumitovant first indicated to Myovant an interest in acquiring the remaining common shares of Myovant that Sumitovant did not already own. As part of that indication, Sumitovant requested access to conduct due diligence of Myovant's business for the

purpose of considering whether to submit a proposal to acquire Myovant.  *Id.* at 24.  Sumitovant retained J.P. Morgan Securities LLC as its financial advisor.  *Id.*  Sumitovant began issuing information requests for its due diligence, even though it had not yet submitted an offer.  After several days of information requests from Sumitovant to Myovant, Myovant management told Sumitovant to narrow the scope of its information requests "to minimize the diversion of management time and attention that would need to be devoted to the due diligence process prior to receiving a potential proposal."  *Id.* at 25.

Later that month, on April 28, 2022, the Myovant Board formed a Special Committee to evaluate the fairness of and decide whether to approve of any proposed transaction by Sumitovant.  *Id.* at 25.  The Special Committee included three purportedly independent directors of Myovant, which served as purportedly independent members of the Company's Audit Committee: Mark Guinan, Terrie Curran, and Nancy Valente.  *Id.*  The Myovant Board tasked the Special Committee with reviewing and evaluating any proposal from Sumitovant, negotiating the terms of any such transaction and making a recommendation to the Board on whether to enter such a transaction, and identifying and evaluating "available alternatives to a potential transaction with Sumitovant, including remaining a separate company."  *Id.*  Shortly after its formation, the Special Committee retained Goldman Sachs to act as its independent financial advisor.  *Id.* at 26.

Over the course of five months, from April to October 2022, the Special Committee engaged in communications with advisors to Sumitovant, including related to the ongoing due diligence process being conducted by Sumitovant through its advisor, J.P. Morgan.

In September 2022, the Special Committee considered "the possibility of conducting outreach to potential third parties other than Sumitovant in advance of receiving a proposal from Sumitovant," but ultimately decided not to do so, apparently based on "the risk that Sumitovant

6

and SMP would be unwilling to support a sale of Myovant to a third party which could make any outreach futile, the likelihood that few parties other than one of Myovant's current commercial partners would be interested in a transaction and the potential negative impact on Myovant and its relationships with third parties if such outreach were to become known." *Id.* at 28.

## 2. The Proposals and Approval by the Special Committee

On September 30, 2022, Sumitovant delivered a non-binding proposal to Myovant offering to "acquire all of the Myovant common shares not already owned by Sumitovant for $22.75 per share in cash" (the "Original Proposal"). *Id.* "In the proposal letter, Sumitovant and SMP stated that they were only interested in acquiring additional Myovant common shares and not interested in selling any of the Myovant common shares that Sumitovant owned or supporting any alternative sale, merger or similar transaction involving Myovant." *Id.*

The following day, the Special Committee held a meeting to consider the Original Proposal. *Id.* As part of that meeting, Goldman Sachs presented financial analyses on the proposed price. "Following evaluation and discussion of the offer price and other terms of Sumitovant's and SMP's proposal, the Special Committee unanimously determined that Sumitovant's and SMP's proposal significantly undervalued Myovant and, therefore, was not in the best interests of Myovant or its shareholders." *Id.* at 29. The Special Committee decided to stop engaging on the due diligence process or negotiation of the Merger Agreement and instructed its financial advisor, Goldman Sachs, to communicate the rejection of the Original Proposal to J.P. Morgan, the financial advisor to Sumitovant. *Id.*

After rejecting the Original Proposal on the basis that it "significantly undervalued Myovant," the Special Committee again considered whether to reach out to third parties that may be interested in purchasing Myovant. However, the Special Committee again declined to do so.

*Id.* Although one alternative bidder came forward and expressed interest, that bidder ultimately stated that it would not make an offer because of Sumitovant had publicly stated that it would not support any alternative to the Merger. *Id.* at 30. Although the Special Committee received no updated proposal from Sumitovant, the Special Committee instructed Goldman Sachs to inform J.P. Morgan that "Sumitovant should be looking to provide value near $30.00 per share." *Id.* This number was apparently based on analysis by Goldman Sachs. *Id.*

After a few weeks of additional negotiations and due diligence, Sumitovant submitted a second proposal for $25.25 per share in cash (the "Revised Proposal"). *Id.* at 31. The Special Committee rejected the proposal. *Id.* After further negotiations between Sumitovant and the Special Committee on the per share price, Sumitovant submitted a final revised offer at $27 per share in cash (the "Final Proposal"). Although information from Goldman Sachs had previously indicated to the Special Committee that $30 per share would be consistent with its analysis, Goldman Sachs delivered a revised opinion that the $27 share price was fair. *Id.* at 33. On October 23, 2022, approximately three weeks after the receipt of the Original Proposal, the Special Committee voted to approve the Merger (and all associated transactions and documentation), which was subsequently approved by the Myovant Board later the same day. *Id.*

The Merger ultimately closed on March 10, 2023. Following the Merger, Myovant became a wholly owned subsidiary of Sumitovant Ltd.

  **C. Bermuda Appraisal Proceeding**

On February 27, 2023, Petitioner and other dissenting shareholders initiated a proceeding in Bermuda, asking the Bermuda court to determine the fair value of their shares under Section 106(6) of the Bermuda Companies Act. As described in the accompanying declaration of Mark Chudleigh, Petitioner and the other dissenting shareholders will have the opportunity to present

8

documentary evidence, witness testimony, and legal arguments to the Bermuda Court. The Bermuda Court will be charged with determining the fair value of the dissenting shareholders' shares. This process involves examining both the valuation of the Company and the fairness of the process that led to the approval of the Merger.

### D. Respondent and the Discovery Sought

Through this Application, Petitioner seeks discovery from Respondent, the founder and former CEO of Roivant and a director of both Sumitovant, the Buyer in the Merger, and its operating entity, Sumitovant Biopharma, Inc. ("SBI"), on issues relevant to the Appraisal Proceeding, including: (i) the fairness of, and the process to reach, the Merger price, including negotiations between Sumitovant and the Special Committee; (ii) Myovant's valuation, including documents concerning any forecasts of the Company's future performance by Sumitovant and its financial advisor and the Special Committee and its financial advisor; and (iii) documents pertaining to any alternative bids to acquire the Company ("Requested Discovery"). The Requested Discovery will significantly assist the Bermuda Court in evaluating the Merger and determining the fair value of Petitioner's shares in the Company. *See* Declaration of Mark Chudleigh Chudleigh Decl. ¶¶ 34-35.

Sumitovant acted as the Buyer in the Merger. Proxy Statement at 1. Sumitovant was also the majority owner of Myovant prior to the Merger. According to the Proxy Statement, Sumitovantis a wholly owned subsidiary of Sumitomo, a pharmaceutical company in Japan. *Id.* at 85. The operating company of Sumitovant is SBI, a Delaware corporation and a wholly owned subsidiary of Sumitovant. *Id.* According to the Proxy Statement, Sumitovant has a "principal office address" at 151 W. 42nd Street, 15th Floor, New York, NY 10036. The Proxy Statement also states that "SBI's principal office address is 151 West 42nd Street, 15th Floor, New York, NY 10036." *Id.*

9

Mr. Ramaswamy was the CEO of Roivant until January 2021 and the Chairman of Roivant until February 2023, when he stepped down to focus on his campaign for President of the United States, which is underway.[3]  At the time of the transaction, Respondent was a director of Sumitovant and SBI.  The Proxy Statement lists Roivant's business address as the same New York City office space as Sumitovant and SBI.

As a member of the board of the Buyer, Sumitovant, as well as a member of the board of SBI, Respondent voted to approve the Merger Agreement and likely would have engaged in discussions related to negotiation of the Merger, including the Merger price.  The Proxy Statement confirms that, "on October 23, 2022, the Sumitovant Board met and approved the entry into the Merger Agreement by Sumitovant and SMP and the entry into the Sumitovant Voting Agreement by Sumitovant." *Id.* at 34.

According to a licensed private investigator's search, Respondent is listed as the owner and current resident of a home in Columbus, Ohio.  Burtis Decl. ¶ 3.  Respondent's website for his campaign for President of the United States also describes Respondent as living in Columbus, Ohio.  *Id.*

**ARGUMENT**

28 U.S.C. § 1782 permits district courts to grant discovery for use in a pending foreign proceeding.  *Intel*, 542 U.S. at 246.  A Section 1782 application must satisfy three statutory requirements: (1) the discovery is sought from someone who resides or is found within the district;

---

[3] The day after announcing his presidential bid in February 2023, Mr. Ramaswamy sold four million shares in Roivant, worth roughly $32 million at the time, but he still owns more than 54 million shares, according to public filings.  *See* Jessica Piper, *How Vivek Ramaswamy Made A Fortune Before Pivoting to Politics*, POLITICO (May 14, 2023), *available at* https://www.politico.com/news/2023/05/14/how-vivek-ramaswamy-made-money-00096046.

10

(2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017).

If these statutory requirements are met, the court then considers four discretionary "*Intel*" factors in deciding whether to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

In exercising this discretion, courts are often mindful of "the twin aims of Section 1782 providing efficient means of assistance to participants in international litigation, and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015). None of the discretionary factors should be given more weight than the others, and no one factor is dispositive. *Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. App'x 95, 97 (2d Cir. June 17, 2009). Moreover, "[a]s a general matter, the Supreme Court . . . ha[s] made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation." *In re Porsche Automobil Holding SE*, No. 1:15-mc-417 (LAK), 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

**I.    THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782.**

    **A.    Respondent Resides in this District.**

Section 1782's first statutory element—that Respondent "reside[s] or is found" in the District—is "satisfied when the recipient of the § 1782(a) subpoena 'resides or is found' in the same district as the court considering the § 1782(a) application." *Matter of De Leon*, No. 1:19-MC-15, 2020 WL 1180729, at *4 (S.D. Ohio Mar. 12, 2020). This element is indisputably satisfied here because Respondent resides in Columbus, Ohio, *see* Burtis Decl. ¶ 3. *See, e.g.*, *In re Natco Pharma (Canada), Inc.*, No. 2:22-MC-33, 2022 WL 3907980, at *2 (S.D. Ohio Aug. 31, 2022).[4]

    **B.    The Discovery Sought is "For Use" in a Foreign Proceeding.**

A Section 1782 application establishes the "for use" requirement by showing that the Requested Discovery may be submitted and relied on by the foreign tribunal. *See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015). To satisfy this element, Petitioner must merely show that it has the procedural right to submit the requested documents to the foreign tribunal. *Accent Delight*, 869 F.3d at 132. A Section 1782 petitioner is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application"). Instead, the district court considers "the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign

---

[4] That any of the evidence may be located abroad does not change the analysis because "§ 1782(a) likewise allows extraterritorial discovery." *Matter of De Leon*, No. 1:19-MC-15, 2020 WL 1180729, at *9 (S.D. Ohio Mar. 12, 2020).

tribunal." *Accent Delight*, 869 F.3d at 131 (emphasis in original); *Mees*, 793 F.3d at 298 ("for use" element satisfied if materials sought can "be employed with some advantage or serve some use in the proceeding").

As explained in the declaration from Petitioner's Bermuda counsel, the Bermuda Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained through Section 1782. In the Appraisal Proceeding, the Bermuda Court will consider all facts and matters that may have a bearing on the determination of fair value. As explained by Petitioner's Bermuda counsel, particularly when the Company points to the Merger price as an indicator of fair value, the Court's inquiry often turns to a consideration of whether the process that led to that price was a fair process. Chudleigh Decl. ¶¶ 15-18.

The Requested Discovery from Respondent, as a director of the Buyer, targets key information about both the price and the process through which the price was considered, negotiated, and ultimately agreed upon between the Buyer and the Special Committee. Accordingly, the Requested Discovery will be of "use" to the Bermuda Court given its relevance in determining the fair value of Petitioner's shares in Myovant.

### C. Petitioner Is An "Interested Person."

"No doubt litigants are included among . . . the interested persons who may invoke § 1782." *Azima v. Citibank, N.A.*, No. 1:22-MC-72 (KPF), 2022 WL 1287938, at *3 (S.D.N.Y. Apr. 29, 2022) (quoting *Intel*, 542 U.S. at 256). Petitioner is a party to the Appraisal Proceeding, Chudleigh Decl. ¶ 9, and is thus an "interested person" under Section 1782.

## II. THE *INTEL* FACTORS WEIGH STRONGLY IN FAVOR OF DISCOVERY.

### A. *Intel* I: Respondent Is Not a Party to the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a participant in the foreign proceeding. This is because "when the person from whom discovery is sought is a

13

participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264). Here, Respondent is not a participant in the Appraisal Proceeding and is not subject to the jurisdiction of the Bermuda court because he is not resident in Bermuda. *Matter of De Leon*, No. 1:19-MC-15, 2020 WL 1180729, at *8 (S.D. Ohio Mar. 12, 2020) ("Petitioner does not seek those documents that are in the possession, custody, or control of her adversaries in the Saudi Litigation, either directly or indirectly; Petitioner only seeks those documents that are in the possession, custody, or control of P&G, an independent third party."); *In re Natco Pharma (Canada), Inc.*, No. 2:22-MC-33, 2022 WL 3907980, at *2 (S.D. Ohio Aug. 31, 2022).

Accordingly, the first *Intel* factor weighs in favor of granting the Application.

### B. *Intel* II: The Bermuda Court is Receptive to the Requested Discovery.

The second *Intel* factor requires courts to consider whether the foreign tribunal is receptive to Section 1782 assistance. Petitioner need only show that the foreign court "will accept information, such as that sought by Petitioner." *Matter of de Leon*, No. 1:19-MC-15, 2020 WL 419436, at *5 (S.D. Ohio Jan. 27, 2020), *aff'd sub nom. Matter of De Leon*, No. 1:19-MC-15, 2020 WL 1180729 (S.D. Ohio Mar. 12, 2020) ("Despite this assertion, the Intervenors also fail to cite any court order, Saudi law, legal principle, treaty, constitutional provision, or statement from Deloitte that the Saudi court would not consider such information. Accordingly, the second factor weighs in favor of granting the application.").

Bermuda Courts will consider any evidence that has a bearing on determining the fair value of a company's shares. *See* Chudleigh Decl. ¶¶ 25-31. Moreover, as set forth in the Chudleigh Declaration, Bermuda courts have specifically held that a Section 1782 application can be used to obtain discovery for use in Bermuda proceedings. *See id.* ¶¶ 26-31. Further, multiple U.S. courts have recognized that Bermuda courts are receptive to evidence obtained through Section 1782

applications. *See, e.g., In the Matter of the Application of Winston Wen-Young for Assistance Before a Foreign Tribunal*, No. 21-cv-8627, ECF No. 19 (D. N.J. June 15, 2021) (granting modified 1782 application for discovery to be used in Bermudan proceedings); *Am. Patriot Ins. Agency, Inc. v. Hendricks*, No. 10-CV-00985, ECF No. 8 (N.D. Ill. Feb. 19, 2010) ("This matter coming to be heard upon [Petitioners'] Petition for Discovery Litigation under 28 U.S.C. § 1782 . . . is granted."); *see also Letter of Request for Examination of Witness Out of Jurisdiction, Am. Patriot Ins. Agency, Inc. v. Hendricks*, No. 10-CV-00985, ECF No. 1-3 (N.D. Ill. Feb. 12, 2010) ("Now I . . . a Judge of the Supreme Court of Bermuda hereby request . . . you will be pleased to summon the said witness . . . . It is the understanding of this court [the Supreme Court of Bermuda] that the granting of assistance is authorised by your federal rules of civil procedure."); *In re Application of Hill*, 2005 WL 1330769 (S.D.N.Y. June 3, 2005) (rejecting motion to quash 1782 subpoena for discovery to be used in Bermudan and Hong Kong liquidation proceedings).

Accordingly, the second *Intel* factor weighs in favor of granting the Application.

C. *Intel* III: Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself. *Id.* at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). This factor thus counts against discovery only in the extreme circumstances where a Section 1782 application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges that *prohibit* the acquisition or use of certain materials," *Mees*, 793

15

F.3d at 303 n.20 (emphasis in original), or "discovery that trenched upon the *clearly established procedures of a foreign tribunal.*" *Euromepa*, 51 F.3d at 1099 (emphasis in original, internal quotation marks omitted). No such circumstance is present here. Therefore, the third *Intel* factor weighs in favor of granting the Application.

        **D.**      ***Intel* IV: The Subpoena Is Not Unduly Burdensome.**

The Requested Discovery is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *Matter of De Leon*, No. 1:19-MC-15, 2020 WL 1180729, at *4 (S.D. Ohio Mar. 12, 2020) ("Section 1782(a) authorizes discovery to proceed 'in accordance with the Federal Rules of Civil Procedure.'"). The Subpoena seeks documents and information directly relevant to the central issues in the Appraisal Proceedings. *See* Section I.B., *supra*. In addition, the Subpoenas are temporally limited to the period in which the Merger was being contemplated, negotiated, and executed. These requests are not unduly burdensome. *See, e.g.*, *In re Request for Jud. Assistance from the Dist. Ct. for Warszawa-Srodmiescie in Warsaw, Poland*, No. 1:22-MC-1, 2022 WL 891550, at *3 (S.D. Ohio Mar. 27, 2022) ("As to the fourth *Intel* factor, the proposed subpoena is not unduly intrusive or burdensome. The request is limited to Devray Kirland's responses to thirty-four interrogatories from the plaintiff and sixteen interrogatories from the defendant."); *In re Application for Discovery Pursuant to 28 U.S.C. § 1782.*, No. 1:19-MC-0102, 2019 WL 4110442, at *3 (N.D. Ohio Aug. 29, 2019) ("The Estate's discovery requests are narrowly tailored to discover the assets and financial information of the foreign defendants and the relevant documents and testimony will be easily identifiable, readily accessible, and not burdensome on them" (cleaned up)).

Petitioner is also willing to meet and confer with Respondent to address any scope or burden concerns. If the Court has remaining concerns about undue burden, granting the

16

Application will not preclude Respondent from bringing a motion to modify the Requested Discovery. *See, e.g.*, *Matter of De Leon*, No. 1:19-MC-15, 2020 WL 1180729, at *10 (S.D. Ohio Mar. 12, 2020) ("The Court will not allow P&G to throw up its hands and claim that undue breadth/burden exists, before it has put in the time to engage in fulsome meet and confer efforts with Petitioner.").

In addition, district courts routinely grant requests for depositions under Section 1782. *See, e.g.*, *In re Natco Pharma (Canada), Inc.*, No. 2:22-MC-33, 2022 WL 3907980, at *3 (S.D. Ohio Aug. 31, 2022); *Matter of De Leon*, No. 1:19-MC-15, 2020 WL 1180729, at *10 (S.D. Ohio Mar. 12, 2020). Here, a deposition of Respondent is appropriate and will significantly aid the Bermuda court in understanding the negotiation and valuation record in a complex, multi-billion dollar transaction.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant its Application.

Dated: June 7, 2023

Respectfully submitted,

By: /s/ Rajeev K. Adlakha

Rajeev K. Adlakha (0087096)
*Trial Attorney*
VORYS, SATER, SEYMOUR AND PEASE LLP
200 Public Square, Suite 1400
Cleveland, OH 44114
Telephone: (216) 479-6100
rkadlakha@vorys.com

Of Counsel:

Duane L. Loft
Brianna Hills Simopoulos
Mark C. Davies
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970 2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com
Mark.Davies@pallasllp.com